## Commonwealth, Appellant, *v.* Kohan.

Argued April 30, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Marvin Garfinkel,* Deputy Attorney General, with him *Herbert B. Cohen,* Attorney General, for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 21, 1956:

On May 10, 1955, while driving his car on Hardy's Road in Hampton Township at a speed which ignored the hazardous conditions of the highway—a light rain was falling, the roadway was wet, winding and slippery —Joseph A. Kohan, 17 years of age, not unnaturally attracted the attention of a State trooper fortuitously on the scene. The officer pursued him an unnamed distance and finally apprehended him on a certain Wildwood Road. A month later the youthful motorist was taken before a Justice of the Peace who fined him $10.00 and imposed costs in the sum of $3.50.

On August 3, 1955, the Bureau of Highway Safety, Department of Revenue, notified Joseph to appear on August 19, 1955, for a hearing on the subject of motor vehicle violation. The notice ended with the paragraph: "The Vehicle Code provides that operating privileges may be suspended for failure to appear for a hearing."

Joseph did not attend the hearing and on October 18, 1955, the Secretary of Revenue, under the authority of Section 615(b) of The Vehicle Code of 1929, as amended, 75 PS §192 (b), suspended his driving privileges indefinitely. Joseph then petitioned the County Court of Allegheny for an appeal from the action of the

Secretary of Revenue, asserting that since he had paid his fine and the costs of prosecution and there had been no accident, he did not believe that there had existed any legal necessity for him to appear at the hearing.

On January 9, 1956, the County Court heard the appeal and dismissed it, after ordering that Joseph's driving privileges be restricted for 60 days. On the following day, January 10, 1956, the County Court reversed its position and sustained the appeal, with the statement that: "The Court is of the opinion that the Secretary of Revenue's action is arbitrary and that a rehearing should be scheduled for the defendant Kohan."

The record fails to reveal any arbitrariness on the part of the Secretary of Revenue. On the contrary, he would have been remiss in the fulfillment of his duties if he had not taken the action which was condemned by the lower court. The work of the Bureau of Highway Safety would fall into hopeless and dismal chaos if, before it could act, it would be required to depend on the procrastinations, the vacillations, and equivocations of accused motorists. It would challenge credulity beyond what has been written in the history of human nature, to expect that a motorist, who failed to appear at a hearing for an alleged violation, would ask for a second hearing, knowing that so long as he failed to request the second hearing he would never need to answer charges brought against him and thus would never need to face the risk of losing his driving privilege, either temporarily or permanently.

The Allegheny County Court apparently treated rather lightly, if at all, the serious business of Joseph's refusal to attend the hearing ordered by the Department. The Court apparently saw nothing amiss in the youthful motorist's explanation that he stayed away from the hearing because he was "busy." If such an explanation had been offered by one more mature in

years, it would still be juvenile. In the febrile life of today, everyone is busy—for good or ill—but an alleged busy-ness is no excuse for snapping one's fingers at the laws of the Commonwealth.

The court below effected a considerable economy in the time required to solve the problem of the appeal by simply citing the case of *Commonwealth v. Puppo*, 63 D. & C. 533 (Northumberland County), and asserting that it was "almost identical in fact history" to the instant case. In the first place, the facts in the *Puppo* case were quite different from the situation in the case at bar. There, the defendant was physically unable to attend the departmental hearing because Puppo "had met with an accident the day before the date of the hearing and was confined to his home on account of injuries for a period of five days . . ." In the second place, the decision of the Court in Northumberland County in the Puppo case cannot be accepted as good law. After the motorist had recovered from his injuries (which only disabled him five days) he still did not advise the Department why he had absented himself from the hearing. Nor did he ask for a second hearing. The Secretary of Revenue had scheduled Puppo's hearing for September 15, 1947. He did not suspend Puppo's license until October 23, 1947. Puppo thus had over a month—from September 19, 1947 (when he had recovered from his disability) until October 23, 1947, to request a second hearing. How long must the Secretary of Revenue and the whole scheme of highway safety wait on the pleasure of a motorist to ask for what he has already been accorded, namely an opportunity to tell his story as to why he has come into conflict with the provisions of The Vehicle Code?

The Court of Northumberland County said further in its opinion, which the Allegheny County Court regarded as authority, that: "Where a person who has

been duly notified to appear before the secretary fails to make his appearance or attend the hearing, then the secretary must notify such person to appear at a subsequent hearing, for the purpose of determining his failure to appear at the first hearing." According to this reasoning if a motorist then fails to appear at a second scheduled hearing, the Secretary will be required to fix a third hearing to give the motorist an opportunity to explain why he stayed away at the second hearing, and, with a third nonappearance, there would need to be a fourth hearing, and so on. Such a procedure would make law enforcement subservient to the defiant and the slothful, and would eventually transform regularized procedure into satiric stultification. Moreover, and this is the categoric answer to the Puppo decision, there is no provision in The Vehicle Code requiring the Secretary of Revenue to notify the errant motorist of a second unrequested hearing.

Section 615(b) of The Vehicle Code specifies, inter alia: "(b) The secretary may suspend the operator's license or learner's permit of any person, after a hearing before the secretary or his representative, . . . whenever the secretary finds upon sufficient evidence: . . . 7. That any such person involved in an accident by motor vehicle or tractor, or in any violation of this act, has failed to attend or appear at a hearing before the secretary or his representatives after being properly notified."

The Court of Common Pleas of Northumberland County arrived at a wrong conclusion as it travelled over the highway of logic because it began its journey of rationalization from an incorrect starting point. It assumed that the language of the Act, as above quoted, provides for two hearings for a motorist who ignores the notice of the Secretary of Revenue for a first hearing. Thus that Court said: ". . . the act now in force

clearly provides that the secretary may suspend the operator's license *after a hearing* before the secretary and his representative and then lists seven situations in which the secretary may exercise such power, the seventh reason being a person's failure to attend or appear at a hearing. It would seem therefore, that since the Act of 1939, the secretary cannot suspend an operator's license where he fails to appear at a hearing until after he has afforded the person a subsequent hearing." But the *hearing* referred to in the phrase "after a hearing" of course means the original scheduled hearing, and not a motorist- requested "subsequent hearing."

There are seven reasons enumerated in Section 615(b) for suspending motor privileges. Briefly, they are: 1. The motorist has committed an offense which calls for mandatory revocation of license; 2. The motorist has violated the motor vehicle or tractor laws; 3. The motorist has failed to file a report of an accident, as required by the Act; 4. The motorist has been involved in a fatal accident; 5. The motorist is incompetent; 6. The motorist has failed to pay a fine imposed by a court or has ignored a notice to appear in court; 7. The motorist has failed to appear at a hearing before the Department after being notified.

Certainly it cannot be argued that if at the original hearing the Department finds that the motorist has committed any one of the misdeeds enumerated in the first six situations that he will still be entitled to a second hearing. How then can it be assumed that if the motorist is not entitled to a second hearing upon violating any one of the first six propositions, he is nevertheless entitled to a second hearing if he violates the seventh? The Code makes no distinction between the first six sets of circumstances and the seventh. Why would the violator of the seventh reason be entitled to

any more consideration than the violator of one of the preceding six reasons. Why would one who flouts the authority of the law by refusing to respect a governmental summons be entitled to more consideration than one who obeys the summons by appearing at the scheduled hearing?

In the case at bar, Joseph Kohan was given a hearing on August 19, 1955. That is, he was afforded an opportunity for a hearing. He chose to remain away. In the civil courts, many judgments, decrees, and orders are entered in favor of plaintiffs or defendants because the opposing party defaults in appearance. The courts are maintained for those who seek justice, not for those who spurn the established forms of law's procedure. Of course, if it should develop that the defaulting person was absent from the scheduled hearing or trial for reasons beyond his control, the judgment, decree, or order entered against him will be opened. Elementary justice provides for such a contingency.

When Thomas Kohan received notice that his license had been suspended because of failure to attend the scheduled hearing of August 15th, he had only to ask, in order to receive, another hearing if he believed he could satisfactorily explain his absence. This procedure was clearly outlined to him on the reverse side of his suspension notice. If then the Department had refused him the requested hearing an appeal to the courts would inevitably have assured him immediate and certain relief.

Thomas, however, chose to disregard the notice of the Department for a hearing; he then chose to be indifferent to a request for a second hearing, and then appealed to the courts seeking exoneration on both the charges of alleged driving violation and failure to respect the processes of the Department. He sought to support this request for exoneration with the naive

statement that he was busy. This is making drakes and ducks of the law and is conduct that should not be encouraged. Fouling the machinery of enforcement of the laws intended to protect life on the highways can be as injurious as operating at high velocity a machine with a defective driving wheel.

In view of the present status of the case, it will be necessary to remand the record to the Secretary of Revenue. It is understandable why the Secretary suspended Joseph Kohan's motor vehicle operating privileges indefinitely. Until the motorist acknowledged in some manner the authority of the Department and until the Department learned why the motorist had not appeared at the scheduled hearing, and what the facts of the alleged violation were, the only action available to the Secretary was the indefinite suspension of operating privileges. However, now that the motorist has had a hearing and the Department has access to the transcript of that hearing, the Secretary will be required to designate the specific period of suspension, allowing the motorist credit for such time as expired between the original order of suspension and its supersession by the court below.

In the interests of clarity and for the guidance of the Courts of the Commonwealth, it will be here added that the decision in the case of *Commonwealth v. Puppo,* supra, does not represent the current law on the subject there treated. In recapitulation it may also be stated that when a motorist receives a notice to present himself at a departmental hearing he is required to make the requested appearance, failing which the Department is warranted in withdrawing driving privileges for such period as the circumstances indicate. In the event the motorist is unable to attend the hearing for good and sufficient cause, his failure to appear shall not subject him to disciplinary or punitive action. If the Depart-

ment refuses a hearing after the motorist has set forth a good and reasonable cause for failing to appear at the originally scheduled hearing, the motorist may then petition the courts to be heard on both the matter of the absence from the first hearing and the merits of the alleged driving violation.

The order of the court below is reversed and the case remanded for such action as is required, not inconsistent with this opinion.